**FEDERAL DEPOSIT INSURANCE CORPORATION, a federally chartered corporation, acting in its corporate capacity, and Shearson Lehman Brothers, Inc., a Delaware corporation, Plaintiffs,**

v.

**SIERRA RESOURCES, INC., a Colorado corporation, and Mountain States Stock Transfer Agents, Inc., a Colorado corporation, Defendants.**

Civ. A. No. 86–F–2301.

United States District Court,
D. Colorado.

Nov. 16, 1987.

Jane Michaels and Lynn Bolinske, Holland & Hart, Denver, Colo., for plaintiffs.

Christa Taylor, Hart & Trinen, Denver, Colo., for defendant Mountain States Stock Transfer Agents, Inc.

David Kozma, Paul G. Goss, Denver, Colo., for defendant Sierra Resources, Inc.

## MEMORANDUM OPINION AND ORDER

SHERMAN G. FINESILVER, Chief Judge.

This matter is before the Court on plaintiffs' Motion to Disqualify Counsel for Defendant Mountain States Stock Transfer Agents, Inc. ("Mountain States"), filed October 15, 1987. The Court directed the parties to brief the relevant issues, and we held a hearing[1] on the motion in accordance with the Tenth Circuit's mandate in *Fullmer v. Harper*, 517 F.2d 20 (10th Cir. 1975). After review of the papers submitted, consideration of oral argument presented at the hearing, and examination of the relevant case law, the Court GRANTS plaintiffs' motion to disqualify for the reasons set forth herein.

## FINDINGS OF FACT

The Tenth Circuit requires trial courts to make specific findings of fact and conclusions of law when ruling on motions for disqualification of counsel. *Fullmer v. Harper*, 517 F.2d 20 (10th Cir.1975). We do so here, but the Court emphasizes that use of the findings made below shall be restricted to our decision on this motion and, of course, to any appellate court review of our order. These findings shall not

---

1. The hearing, held November 5, 1987, was attended by Jane Michaels, Esq. and Lynn Bolinske, Esq. on behalf of plaintiffs, Christa Taylor, Esq. on behalf of Mountain States, and Mr. Rock Carter, Vice-President of Mountain States. David Kozma, Esq., counsel for defendant Sierra Resources, Inc., also attended the hearing, but Sierra Resources takes no position on this motion. Although the Court provided both sides with the opportunity to present testimony, neither party offered evidence into the record.

bind the parties for any other purposes in the course of this litigation.

## I.

On March 24, 1982, Euro–American Exploration Corporation ("Euro–American"), James T. Hays ("Hays"), and Bengal Oil and Gas Corporation executed, as co-makers, a promissory note to the First National Bank of Midland Texas in the amount of $70,000.00. On April 21, 1982, Euro–American and Hays executed, as co-makers, another promissory note to the First National Bank of Midland in the amount of $106,095.89. On May 5, 1982, Euro–American and Hays executed, as co-makers, two additional promissory notes to the bank in the amounts of $456,844.13 and $330,000.00. Plaintiffs contend, and defendants deny, that as collateral for these notes, Euro–American and Hays pledged 4,227,593 shares of Sierra Resources Inc. ("Sierra") common stock.

On October 14, 1983, the First National Bank of Midland was declared insolvent, and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver of the bank. The above-described notes and collateral were sold to the FDIC in its corporate capacity.

On January 1, 1986, Euro–American and Hays defaulted on the notes. By letter dated January 8, 1986, FDIC notified Euro–American that the shares of Sierra common stock pledged as collateral would be sold through a broker chosen by the FDIC. The FDIC selected Shearson Lehman Brothers, Inc. ("Shearson").

The Sierra stock certificates in question were restricted securities not registered under the Securities Act of 1933. A restrictive legend appeared on the face of each stock certificate. Plaintiffs contend the shares nonetheless could have been sold pursuant to Rule 144(k) of the Securities Act of 1933. During February, March, and April, 1986, Shearson sold the shares to third parties. At all relevant times, Mountain States acted as the transfer agent for the Sierra stock.

Defendants requested, and plaintiffs did not provide, a formal opinion on the legality of the sale of the shares under the Securities Act. Plaintiffs allege that applicability of Rule 144(k) was clear, and that no formal legal opinion was required. However, defendants refused to authorize the transfer of shares of Sierra stock from FDIC to Shearson. Plaintiffs claim that defendants' refusal to transfer the stock without a formal legal opinion was a breach of their duties of good faith and fair dealing under the Uniform Commercial Code (UCC) as adopted in Colorado, C.R.S. §§ 4–8–401 *et seq.* Defendants deny the material allegations set forth in the complaint and assert several affirmative defenses. The case is set for trial to a jury on February 1, 1988.

## II.

William T. Hart is a member of the Denver law firm of Hart & Trinen. Hart & Trinen, with two partners and one associate, specializes in securities matters and securities litigation. Some time prior to the instigation of this lawsuit on November 4, 1986, Mountain States obtained legal advice from Mr. Hart, its counsel with whom it has maintained a long-standing relationship. Mountain States specifically consulted Mr. Hart in order to obtain his opinion on whether it should transfer the Sierra stock without a legal opinion. Mr. Hart told his client that he believed that any potential lawsuit that the FDIC and Shearson might bring against it in connection with the Sierra stock transaction was without merit. (Defendant's Response at 1). After plaintiffs filed this lawsuit, Mountain States retained Donald T. Trinen, Mr. Hart's partner, to represent its interests in the litigation.

On September 2, 1987, Donald Trinen wrote to plaintiffs' counsel to notify plaintiffs that Mountain States had designated William Hart to testify at trial as a material witness and as an expert witness. Based upon this designation, plaintiffs filed this motion to disqualify the law firm of Hart & Trinen as counsel for defendant Mountain States, alleging violation of Disciplinary Rule 5–102(A) of the Code of Professional Responsibility.

## CONCLUSIONS OF LAW

Plaintiffs' motion rests upon Canon 5 of the American Bar Association's Code of Professional Responsibility and Disciplinary Rule 5–102(A) ("DR 5–102(A)") promulgated thereunder.[2] Canon 5 mandates that, "A lawyer should exercise independent professional judgment on behalf of his client," and DR 5–102(A) elaborates as follows:

> If, after undertaking employment in contemplated or pending litigation, a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial, and his firm, if any, shall not continue representation in the trial. . . .

■ The rationale for disqualifying a testifying attorney is discussed in Ethical Considerations 5–9 and 5–10. The rule operates to protect the interests of all parties to the litigation as well as the integrity of the legal profession. This Court previously has had the opportunity to discuss these ethical considerations at length. *See Greenebaum–Mountain Mortgage Co. v. Pioneer Nat'l Title Ins. Co.,* 421 F.Supp. 1348, 1353–54 (D.Colo.1976). The same reasons supporting disqualification of the testifying attorney also support disqualification of the testifying attorney's law firm. In so far as the testifying partner has a stake in the outcome of the trial, his credibility is impaired. *Comden v. Superior Court,* 20 Cal.3d 906, 145 Cal.Rptr. 9, 576 P.2d 971, *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 652 (1978). When a client's case is proffered through the testimony of the trial attorney's partner, the advocate partner must awkwardly argue his testifying partner's credibility. *MacArthur v. Bank of New York,* 524 F.Supp. 1205, 1208 (S.D.N.Y.1981).

■ We recognize our obligation to take measures against unethical conduct occurring in any proceeding before this Court. *Musicus v. Westinghouse Elec. Co.,* 621 F.2d 742, 744 (5th Cir.1980). The decision on disqualification is within the sound discretion of the trial judge. *Council for*

*Nat'l Register of Health Service Providers in Psychology v. Amer. Home Assurance Co.,* 632 F.Supp. 144, 147 (D.D.C.1985); *Greenebaum,* 421 F.Supp. at 1351. In our discretion, this Court has declined to take a literal approach to application of DR 5–102. *Greenebaum,* 421 F.Supp. at 1352–53. Rather, we will decide whether this litigation can be conducted in fairness to all, with all parties properly represented, if we permit Mr. Trinen and his firm to continue their representation of Mountain States.

■ We emphasize that counsel cannot be disqualified on the basis of speculation or conjecture, and the Court may rule on disqualification only after the moving party has alleged facts which demonstrate a potential violation of the disciplinary rules. *Brotherhood Railway Carmen v. Delpro Co.,* 549 F.Supp. 780, 788 (D.Del.1982). The moving party has the burden to establish grounds for disqualification. *Field v. Freedman,* 527 F.Supp. 935, 941 (D.Kan. 1981).

■ Mountain States does not dispute that, on its face, DR 5–102(A) mandates that Hart & Trinen withdraw as trial counsel due to its own designation of partner William Hart as both a material and expert witness. Plaintiffs' motion to disqualify sets forth specific facts which support their contention prejudice to the parties will result if the Court permits Hart & Trinen to continue to represent defendant in this action. In particular, the Court believes that the jury will be confused and may attribute too much or too little weight to Mr. Hart's important testimony. The jury likely would be unable to adequately distinguish among Mr. Hart's multiple roles, including those of: (1) an expert on the legality of stock transfers; (2) a critical fact witness on the issue of Mountain States' good faith and fair dealing; (3) an attorney responsible for upholding the standards of ethical conduct; and (4) a named-partner in the law firm representing the defendant. Neither party disputes that Mr. Hart's credibility is of great importance in establishing

**2.** The United States District Court for the District of Colorado has adopted the Code of Professional Responsibility under our Local Rule 306.

Mountain States' good faith defense to this action. The great potential for confusion and prejudice, coupled with the justifiable concern about how the public would perceive this situation, justifies disqualification under DR 5–102(A).

Mountain States argues, however, that the substantial hardship exception to disqualification applies in this case. The substantial hardship exception, found in DR 5–101(B)(4), provides that a lawyer may continue his employment "if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."[3]

■ Mountain States asserts that it would incur substantial hardship from disqualification of counsel because it has expended considerable funds in hiring Hart & Trinen to defend it in this action. Mountain States also contends that disqualification of Hart & Trinen and retention of new counsel could necessitate its expenditure of an additional $20,000 for representation. We assume the truth of defendant's contentions despite the absence of evidence supporting the assertions. However, the Court finds that these facts alone do not bring Mountain States within the substantial hardship exception. The assertion that present counsel has consumed great resources and has spent considerable time in preparation for trial is not sufficient to qualify defendants for the substantial hardship exception. *Kalmanovitz v. G. Heileman Brewing Co., Inc.*, 610 F.Supp. 1319, 1326 (D.Del.1985). Moreover, a client will necessarily incur additional expenses where a court finds withdrawal or disqualification of present counsel is required under the rules of ethical conduct. These expenses do not automatically result in application of the substantial hardship exception. *MacArthur v. Bank of New York*, 524 F.Supp. at 1210.

Mountain States further contends that invocation of DR 5–102(A) would unfairly penalize it for having the foresight to seek the advice of its legal counsel prior to litigation. It argues that at the time plaintiffs instituted this lawsuit, "it was not then apparent that William Hart would be needed to testify for his client, as it was anticipated that the legal standards involved could be addressed by an independent expert." (Defendant's Response at 2–3). We disagree.

The Court is not persuaded that an independent expert in the area of securities regulation law could not provide credible testimony on the requirements of Rule 144. Moreover, by counseling Mountain States in this business transaction, Hart & Trinen put itself in the position of having Mr. Hart acquire factual information which made his testimony necessary when the transaction evolved into litigation. When the client then retains the same law firm to represent its interest in the litigation, counsel faces the possibility of disqualification.

> [I]f an attorney chooses to become intimately involved in the client's business, then he or she must be prepared if the matters involved result in litigation. This may be displeasing to firms that wish to have some members act as businessmen and others as litigators. But when these firms place themselves in the position of having an attorney acquire information that makes his testimony necessary, they must accept the consequences. *MacArthur v. Bank of New York*, 524 F.Supp. at 1211.

Plaintiffs' complaint alerted Mountain States and counsel that defendant's good faith in failing to transfer the Sierra shares was at issue. Certainly Mountain States anticipated that, in order to defend against the allegation, evidence proving reliance upon the advice of legal counsel would demonstrate its good faith and fair dealing. Mr. Hart provided that legal advice. His important testimony would be required at trial. The fact that counsel did not recognize the Disciplinary Rule dilemma created by this situation is not relevant in our evaluation of substantial hardship. *Greenebaum*, 421 F.Supp. at 1352.

Finally, Mountain States relies upon the prior decision of this Court in *Greeneb-*

---

**3.** The three other exceptions to the rule, DR 5–101(B)(1–3), do not apply in this case.

*aum–Mountain Mortgage Co. v. Pioneer Nat'l Title Ins. Co.,* 421 F.Supp. 1348 (D.Colo.1976), as authority supporting its position that Hart & Trinen may continue its representation at trial. The Court reaffirms the legal principles set forth in our previous opinion. However, we distinguish our earlier holding on two important factual grounds.

First, in *Greenebaum,* the defendant/movant designated one of the members of plaintiff's law firm as a material witness. In contrast, Mountain States itself designated Mr. Hart as both a material witness and an expert witness at trial. This is not a situation where the opposing party called the adversary's attorney as a witness in an attempt to rob the opposing party of its chosen representative. Mountain States must have known that it would call Mr. Hart as a lay witness at trial, and its counsel must have anticipated that a motion to disqualify pursuant to DR 5–102(A) would follow its eventual designation of Mr. Hart as a witness.

Second, we found in *Greenebaum* that the timing of defendant's motion to disqualify indicated that defendant's counsel had filed the motion as an attempt to seek a tactical advantage in the litigation. There, the movant filed the motion fourteen months after the institution of the lawsuit, and the motion was filed as part of a voluminous cross-motion for summary judgment. *Id.* at 1354. Here, however, Mountain States did not respond to plaintiffs' written interrogatories seeking discovery of defendant's lay and expert witnesses until September 2, 1987, more than seven months after they were served. Following Mountain States eventual designation of Mr. Hart as a lay and expert witness, plaintiffs told Mountain States' counsel at the parties' pretrial conference on September 10, 1987, that they were concerned that the designation may violate DR 5–102(A). At that time, Mountain States offered to provide plaintiffs with authority supporting their position that Hart & Trinen need not withdraw its representation in the case. Despite follow-up letters from plaintiffs' counsel dated September 15, 1987, and September 28, 1987, defendant

Mountain States never responded to plaintiffs' requests for the citations. After one last attempt to resolve the matter by telephone with counsel for Mountain States, plaintiffs finally filed this motion on October 15.

The Court finds that plaintiffs' counsel made every effort to avoid filing this motion to disqualify and engaged in good faith attempts to resolve the situation out of court. Realizing that no other alternative existed, plaintiffs timely filed this motion. We find that plaintiffs have not misused the rule for their tactical advantage. Any hardship now faced by disqualification of counsel three months prior to trial resulted from the actions of defendant's counsel. Accordingly,

IT IS ORDERED that plaintiffs' motion to disqualify counsel for defendant Mountain States Stock Transfer Agents, Inc. is GRANTED. The Court does not enter the order based upon any professional or personal impropriety on the part of Donald T. Trinen or William T. Hart.

This order constitutes Findings of Fact and Conclusions of Law as required by *Fullmer v. Harper,* 517 F.2d 20 (10th Cir. 1975).