The GATES RUBBER COMPANY, a Colorado corporation, Plaintiff,

v.

BANDO CHEMICAL INDUSTRIES, LIMITED, a Japanese company, Bando American, Inc., an Illinois corporation, Bando Manufacturing of America, Inc., a Kentucky corporation, Bando U.S.A., Inc., a Delaware corporation, Allen Hanano, an individual, Steven R. Piderit, an individual, Ron Newman, an individual, Denise Hanano, an individual, and John Does 1–93, Defendants.

Civ. A. No. 92–S–136.

United States District Court, D. Colorado.

June 9, 1994.

Rodger Wilson, Wilson, Godin & Baity, LLC Daniel Hoffman, Holmes, Robert Owen, Denver, CO, for plaintiff.

Shelley Don, Don & Hiller, P.C., Stephen Dunham, Morrison & Foerster, Denver, CO, for defendants.

## ORDER DENYING MOTION TO DISQUALIFY COUNSEL

SPARR, District Judge.

THIS MATTER is before the Court on Plaintiff's motion to disqualify the law firm of Don, Hiller & Galleher (hereafter "DH & G") from further representation of any Defendants in this action. Plaintiff filed its motion on April 21, and Defendants filed their responses to the motion on April 29, 1994. A response was also filed on that date by Mr. Gary Kessinger, a former employee of Bando Manufacturing of America. Oral argument was heard on May 2, 1994. The Court now makes the following Findings and Conclusions with respect to the Plaintiff's motion to disqualify DH & G.

### Factual Background

The facts in this matter are basically undisputed. DH & G presently represents Defendants Bando American, Bando Manufacturing, and Bando USA (hereafter collectively referred to as the "Bando companies"), and is former counsel for the named individual defendants Allen Hanano (hereafter "Hanano"), Ron Newman, Steven Piderit, and Denise Hanano. The law firm of DH & G also represented Gary Kessinger, a nonparty, by virtue of a conversation between Mr. Kessinger and Mr. Shelly Don, lead counsel for DH & G. Defendant Bando Chemical Industries, Ltd., is represented by the firm of Morrison & Foerster.

This action was originally filed against Bando American and Bando Manufacturing, and several Bando employees, including the Defendants Allen Hanano, Ron Newman, Denise Hanano, and Steven Piderit. At that time Allen Hanano was president of Bando American and served as a director of Bando Manufacturing. Ron Newman was an employee of Bando American as were Steven Piderit and Denise Hanano. At the time of the permanent injunction hearing on the copyright issues, DH & G was not counsel in this case. In August 1992, upon withdrawal of previous counsel, the DH & G firm entered its appearance as counsel for these parties. When DH & G entered its appearance, Allen Hanano was President of Bando American. He remained an officer throughout the time that DH & G represented him.

Subsequent to the entry of the permanent injunction, Plaintiff filed its first motion for sanctions in late 1992. The sanctions matter was heard by Magistrate Judge Schlatter on September 20 through 29, 1993. As a result of the filing of the motion for sanctions, each individual defendant retained separate counsel, who generally served as co-counsel with DH & G for a time before DH & G withdrew its representation of any individuals. Gates moved for sanctions against Mr. Hanano. As a result of this personal allegation, Mr. Hanano consulted Mr. Jeffrey Springer in May

1993 and on July 13, 1993, Mr. Springer entered an appearance to represent Mr. Hanano personally in the subsequent proceedings. Mr. Springer was counsel for Mr. Hanano at his deposition on August 27, 1993 and was present representing Mr. Hanano during the hearing on sanctions before Magistrate Judge Schlatter in September 1993. DH & G continued to represent Allen Hanano after he obtained individual counsel. Ron Newman, an employee of Bando Manufacturing, was also represented by DH & G. In August 1992, Mr. Newman contacted attorney Gary Lozow regarding his part in this litigation. Mr. Lozow entered his appearance for and in connection with the sanctions proceedings on July 16, 1993. Mr. Lozow has participated in various depositions as Mr. Newman's counsel and has represented him in the deposition on August 30, 1993 and throughout the September 1993 sanctions hearing. DH & G also continued to represent Defendant Ron Newman after he had obtained individual counsel. As indicated above, DH & G also represented Defendant Steven Piderit, and he later obtained independent counsel, David Savitz. Mr. Piderit is not particularly involved in the ethical considerations triggered by this motion as the motion does not articulate any conflict between DH & G and Piderit. He nonetheless has an interest in the outcome of the case and has urged the Court to deny the motion to disqualify DH & G. The motion in question likewise fails to indicate any conflict between DH & G and Denise Hanano. Ms. Hanano has also obtained her own attorney, Patrick Burke, and has responded to the motion to disqualify DH & G by consenting to their continued representation of the Bando Defendants.

*Discussion of Issues Raised in the Motion*

I. Defendants and Others Affected By This Motion

For purposes of this order, the Court does not consider Gates' motion to address any potential conflicts between DH & G and either Denise Hanano or Steven Piderit. The motion does, however, address a conflict between DH & G and a non-party, one Gary Kessinger, who is a former employee of Bando American. Mr. Kessinger was represented very briefly by Mr. Shelley Don of DH & G on a single occasion arising out of an incident in the fall of 1993. This Court had a hearing on September 13, 1993, and characterized the relationship between Mr. Don and Mr. Kessinger as follows:

> "It is ... tenuous as to whether or not Mr. Don was at the time representing Mr. Kessinger, although he was clearly representing Bando Manufacturing. Again, based upon the facts, the Court will find that Mr. Don was in fact at one point in time, albeit brief perhaps, representing or acting or counseling Mr. Kessinger personally with respect to the matters in question."

The issue that arose at the time of the September hearing regarded Mr. Kessinger's conduct at a site inspection in Bowling Green, Kentucky, which gave rise to a claim of fifth amendment privilege by Mr. Kessinger. Since August 1993, Kessinger has been represented by Lawrence J. Zielke of the firm of Pedley, Ross, Zielke, and Gordinier of Louisville, Kentucky. The only potential representation of Kessinger by Mr. Don or DH & G occurred in the single brief incident referred to by the Court in the September 13, 1993 hearing.

The Court is also aware from *in camera* disclosures at the September 13, 1993 hearing that the subject of the communication between Kessinger and Don referred to at that time is unrelated to the specific issues raised by Gates in their motion to disqualify. It is further noted that Kessinger, through his Kentucky counsel, has filed a response in opposition to the motion to disqualify DH & G, and Kessinger has consented, after consultation, to the continued representation by DH & G of Bando and stated through his counsel that any conflict between DH & G and Gary Kessinger is not substantially related to the matters for which Kessinger sought advice from Shelley Don and DH & G. Accordingly, the scope of the motion is limited to conflict—potential or otherwise—which DH & G might have with its former clients Hanano and Newman. Both Defendants Hanano and Newman have filed, on April 29, 1994, responses to the Plaintiff's motion to disqualify in which it is indicated

(in Hanano's response, evidenced by a separate signature) that their consent is given to DH & G's continued representation.

II. Factual Background Relating to the Motion

In November 1993, Bando American discovered evidence that Hanano had falsified corporate records regarding reimbursement of expenses. When confronted with this information by corporate officers, Hanano apparently alleged that certain falsely claimed expenses had been used to purchase gifts for a former Gates employee in exchange for information regarding this litigation. Apparently Hanano has since, through counsel, retracted this statement. The disclosures and statements attributed to Hanano were made to Mr. Richard Browsky, the President of Bando American, and Craig Cero, the controller of the company. (Disclosure of Defendant Bando American, Bando Manufacturing, and Bando USA filed April 19, 1994.)

On April 15, 1994, Hanano's counsel[1] filed a disclosure of Defendant Allen Hanano. This disclosure revealed the existence of the conflict between Bando American and Hanano concerning the alleged fraudulent expense claims and embezzlement of funds from Bando American. The Hanano disclosure further revealed that he had recorded a conversation between himself and Newman at which time Newman had stated that he and Kessinger saw individuals shredding documents at Bando Manufacturing's Bowling Green facility shortly before the Bowling Green site inspection. This document shredding issue had been a paramount issue in the sanctions hearing before Magistrate Judge Schlatter. In response to a question from Allen Hanano, Ron Newman indicated that if he were asked, he would say nothing about the incident and if the matter were discovered, he would stick to that story and say he didn't notice it, and didn't see anything.

Shortly after Hanano's disclosure, DH & G filed the Bando disclosure. In this disclosure, the Bando Companies indicated that Hanano, Newman, and Kessinger were acting outside the scope of their employment, and the actions occurred without the knowledge or authorization of the corporations. The disclosure also revealed that such acts were repudiated and that Hanano's resignation was accepted in lieu of terminating his employment. The employment action was based upon Bando American's determination that Hanano had falsified corporate records for reimbursement of business expenses and had engaged in related misconduct. In addition, the disclosure indicated that the board of directors of Bando Manufacturing directed the Senior Vice President of the corporation to prepare a written reprimand to Ron Newman based on the contents of the tape recording and his failure to disclose to the corporation information regarding the October 1992 site inspection.

It is quite evident that at this point in the litigation, the Bando Companies are now adverse to Allen Hanano, Ron Newman, and Gary Kessinger on many potential issues which may arise in this case. In all filings by individual Defendants in response to the present motion, the individual Defendants have objected to the Plaintiff's motion and have consented to DH & G's continued representation of the Bando Companies. A similar response has been filed by the Defendant Bando Chemical Industries, Ltd., through its counsel, Stephen S. Dunham, of Morrison and Foerster. All Defendants allege prejudice would result if the Court were to grant Gates' motion to disqualify DH & G. Each of the individual Defendants and Bando Chemical Industries, Ltd., have indicated in their responses that they consent to DH & G's continued representation of Bando American, Inc., Bando Manufacturing of America, Inc., and Bando USA.

Defendants Newman and Hanano, and their respective counsel, have confirmed by *in camera* exhibits offered and received at the hearing of this matter, that they have been advised of the existence of actual and potential conflicts between their interests

---

1. On February 15, 1994, DH & G and counsel for the individual Defendants filed a joint motion for the substitution of counsel for certain Defendants. In that motion, defense counsel requested leave of the Court for DH & G to withdraw as counsel of record for the individual Defendants. The joint motion for substitution of counsel was granted.

and the interests of DH & G's present clients in this litigation. Newman and Hanano further assert that they have been advised of the implications of such conflicts and they have consented to, after conferring with counsel, the continued participation of Don, Hiller & Galleher, P.C., as counsel for the Bando Companies.

### III. Discussion of Legal Issues

■ Before discussing the legal issues implicated in the Plaintiff's motion to disqualify DH & G, the Court must first observe that the Plaintiff has filed its motion "to avoid the problems that would be created if DH & G were to stay in the case only to have to withdraw at a later date." Brief in support at 7. As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification. *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88 (5th Cir.1976) (citations omitted). The movant is obviously not the former client of DH & G. With that observation made, the Court's control of attorney's conduct in litigation is within the supervisory power of the trial court, and its performance in this area is a matter of judicial discretion. *E.E.O.C. v. Orson H. Gygi Co., Inc.*, 749 F.2d 620, 621 (10th Cir.1984). The district court has an obligation to take measures against unethical conduct occurring in any proceeding. *F.D.I.C. v. Sierra Resources, Inc.*, 682 F.Supp. 1167, 1170 (D.Colo.1987). The United States District Court for the District of Colorado has adopted the rules of professional conduct, as adopted by the Colorado Supreme Court, as standards of professional responsibility applicable in this court. D.C.Colo.LR 83.6 (as amended April 15, 1994). The burden of proof is on the movant. *Id.* See also *Hunter Douglas, Inc. v. Home Fashions, Inc.*, 811 F.Supp. 566, 568 (D.Colo. 1992).

Disposition of a motion to disqualify an attorney rests with the sound discretion of the trial court. *SLC Limited v. Bradford Group West, Inc.*, 999 F.2d 464, 466 (10th Cir.1993). The question before the Court on this motion to disqualify is whether the DH & G firm may continue to represent their present clients, the Bando companies, in light of any conflict which has arisen or may arise between the Bando companies and DH & G's former clients, Hanano, Newman, and presumably Mr. Kessinger.

■ The Tenth Circuit first established the substantial relationship standard for lawyer disqualification in *Redd v. Shell Oil Co.*, 518 F.2d 311 (10th Cir.1975). In *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir. 1985), it held that the merits of the disqualification motion depend on whether a substantial relationship exists between the pending suit and the matter in which the challenged attorney previously represented the client. Once a substantial relationship has been found, a presumption arises that a client has indeed revealed facts to the attorney that require disqualification. The presumption is intended to protect client confidentiality as well as to avoid any appearance of impropriety. In the present motion, Gates obviously may raise only the latter issue. The *Smith v. Whatcott* decision is substantially codified at Rule 1.10 of the Colorado Rules of Professional Conduct.

■ Gates alleges that there exists an actual conflict of interest between DH & G, Defendants Newman and Hanano, and Gary Kessinger. There are no allegations of actual conflicts with respect to Defendants Steven Piderit or Denise Hanano. Disqualification under the Rules of Professional Conduct depends on the nature of the information learned and the degree of the relationship between the lawsuit and the representation of the individuals involved. In this case, there is no doubt that a substantial relationship did in fact exist as defined by the case law. With regard to the dispute surrounding which rule applies—Rule 1.7 or Rule 1.9—the Court concludes that Rule 1.9 applies by virtue of the fact that Hanano, Newman, and presumably Kessinger, are former clients. Rule 1.9 provides:

Conflict of Interest: Former Client

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to

the interests of the former client unless the former client consents after consultation.

The comment to Rule 1.9 states that the principles in Rule 1.7 determine whether the interests of the present and former clients are adverse. This mandate of client loyalty, codified in Rules 1.9 and 1.7, requires a lawyer to decline subsequent representation involving a position adverse to a former client arising in substantially related matters. Because there can be little dispute that "substantially related matters" are concerned here, the Court will direct its attention to the relevant issues under Rules 1.7 and 1.9. The Court will now turn its attention to the general rule concerning conflict of interest:

> Rule 1.7 Conflict of Interest: General Rule
>
> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
>> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>>
>> (2) each client consents after consultation.
>
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client ... unless:
>
>> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>>
>> (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

.    .    .    .    .

■ It is apparent that Rule 1.7(a) states the general rule, while (b) concerns simultaneous representation. The comments to Rule 1.7 specify that where more than one client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by Rule 1.9. The comments to Rule 1.7 further state, regarding conflicts in litigation, simultaneous representation of parties whose interests in litigation may conflict, such as coplaintiffs or codefendants, is governed by paragraph (b) of Rule 1.7. There are accordingly at least two possible analyses for the present issue: under Rule 1.7(b) or under Rule 1.9(a). The comments to 1.9(a) explain, with regard to adverse positions, that disqualification from subsequent representation is for the protection of former clients and can be waived by them. A waiver is effective only if there is disclosure of the circumstances, including the lawyer's intended role in behalf of the new client. Rule 1.7(b) contains the same conditions for continued representation of a client as are contained in 1.7(a), except with the proviso concerning explanation of the implications of multiple representation. Concerning the argument raised by Plaintiff that the Defendants cannot consent to allow their interests to be injured, and the authority cited in support thereof, the Court would reiterate that the issues here concern multiple representation first, and conflict or adversity of interest only secondarily. See *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1356–57 (6th Cir.1993) (dissent of Merritt, C.J.).

DH & G simultaneously represented the Bando Companies' interests as well as those of Hanano and Newman for a substantial period of time. This representation continued through the emergence of the conflicts upon which Plaintiff's motion is based. In order for DH & G to continue to represent the Bando Companies, the more restrictive provision of Rule 1.7(b) requires the consent of the former clients after consultation and an indication that counsel reasonably believe that the representation will not adversely affect the relationship with the former client. It appears from the facts that such beliefs have been asserted by all individual Defendants (through counsel), and that each has consented to DH & G's continued representation of the Bando Companies in this matter. In addition, the Bando Companies have been advised (through their board of directors) by independent counsel, Mr. Hennessey, of the extent of the potential ethical problems in-

volved and have been thoroughly informed of the possible ramifications of DH & G's continued representation. The Bando companies have consented to DH & G's continued representation of their interests. It is likewise apparent that the more relaxed requirements under Rule 1.9(a) have also been met.

■ With these matters pertaining to both the present and former clients and informed consent (based on the submissions of Defendants at the hearing on this motion) being considered, this Court must conclude that, based on all the facts before it, the Defendants and their respective counsel are in a better position than the Plaintiff to determine whether DH & G has a positional conflict or some other conflict which might affect their independent judgment or loyalties to clients. Indeed, the Court can also conclude that DH & G has established its reasonable belief that the representations will not adversely affect the relationship with the (former) client. See ABA Op. 93–372 (4–16–93). The Court must also observe that while the Plaintiff has asserted its concern (which is also legitimately a general concern of the courts) that Defendants may use this alleged extant or possible future conflict for purposes of improper litigation strategy, this Court must deny the motion as it is primarily based upon future contingencies of which neither the Court nor any of the parties can know. It will therefore err in favor of allowing Defendants to retain counsel of their choice, and will not at this time allow the drastic relief sought by the Plaintiff.

■ In light of the applicable standards under the Rules discussed above, the Court concludes that there is no indication that DH & G has been or will be forced to take positions adverse to either its former or present clients, and accordingly, there is no violation of Rule 1.7 or Rule 1.9 implicated. There is no apparent actual conflict, only a potential one, arising from Plaintiff's version of a future scenario. DH & G has conceded adversity between its present and past clients, but this Court is satisfied that, with respect to Allen Hanano, Ron Newman, and Gary Kessinger, there has been a knowing waiver, an "informed consent" to the existence of this adversity. Because the Court

has found that DH & G has met the two-pronged standard of reasonable belief coupled with waiver, the only remaining basis for the motion to disqualify can be the appearance of impropriety. Any such allegation made by the Plaintiff, which might presumably arise in subsequent proceedings and an eventual trial of this matter, is an insufficient basis on which to rest disqualification. See *Board of Education of New York City v. Nyquist,* 590 F.2d 1241, 1247 (2d Cir.1979).

The individual Defendants, and any other persons or parties implicated by this ruling shall notify the Court within twenty days of this order if there is disagreement with the Court's conclusion that the above-named individuals have effectively waived their right to object to present conflicts with the firm of DH & G. In light of this ruling, and the fact that Newman and Hanano have consented to DH & G's further representation of the Bando companies, and that these Defendants can properly consent to such and effect waiver of any objections, the Court must **DENY** the Plaintiff's motion to disqualify. The effect of this ruling is obviously not to deny any motions to disqualify which might be filed in the future, but rather to deny the present motion in light of all the appropriate considerations, including factual and legal issues brought to its attention.

The simultaneous briefs regarding proceedings on remand shall be filed **on or before July 15, 1994.** The hearing on the motions to dismiss is reset for October 21, 1994, at 9:00 a.m., in courtroom C–501. At that time the Court will also determine the scope of proceedings in the remanded portion of this case.